IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Case No. 7:20-cv-00040-M

CATHLEEN BRYANT,                          )
                                          )
                        Plaintiff,        )
                                          )
v.                                        )          **OPINION**
                                          )          **AND ORDER**
CORE CONTENTS RESTORATION, LLC, )
YVONNE D. McCORMICK, NICOLE S.      )
McCORMICK, KAREN J. KOSS, and       )
ADRIANE B. NULL,                    )
                                          )
                        Defendants.       )

This matter comes before the court on: (1) Defendants Core Contents Restoration, LLC ("CC"),

Yvonne D. McCormick ("Yvonne"), Nicole S. McCormick ("Nicole"), Karen J. Koss, and Adriane B.

Null's motion to dismiss the complaint or, in the alternative, to require Plaintiff to replead adding more

detail, filed on April 14, 2020 [DE-31]; and (2) Plaintiff's motion for partial summary judgment, filed on

July 20, 2020 [DE-64].

For the reasons that follow, Defendants' motion is GRANTED IN PART and DENIED IN PART

and Plaintiff's motion is DENIED.

## I.      Background

The complaint alleges as follows: in September 2018, Hurricane Florence struck eastern North

Carolina, causing damage to the home that Plaintiff shared with her mother in Jacksonville. [DE-1 ¶ 16,

229] Plaintiff hired a remediation company to help repair the home, and the company recommended that

Plaintiff temporarily move out of the home and put her personal property (the "Property") into storage.

1

[DE-1 ¶ 242] The company recommended CC "to pack, transport, store, and return" the Property. [DE-1 ¶ 249]

On or about October 2, 2018, Plaintiff first met Yvonne, an officer and member of CC,[1] at Plaintiff's home. [DE-1 ¶¶ 166–89, 258] After inspecting the home and Plaintiff's Property, Yvonne agreed on CC's behalf to transport some of the Property to Plaintiff's nearby temporary residence and the remainder to a CC facility in Florida. [DE-1 ¶ 261] According to Plaintiff, Yvonne (1) never mentioned cleaning the Property and (2) offered to store the Property indefinitely in Florida without a surcharge, and (3) did not offer any literature regarding CC's general business or about what CC would do with Plaintiff's Property specifically. [DE-1 ¶¶ 279–85, 557] Plaintiff asked Yvonne how much CC's services would cost, and Yvonne told her that the cost would be determined at a later time. [DE-1 ¶ 286] Plaintiff alleges that (1) the first estimate for the cost of CC's services was not compiled until January 2019 and (2) she did not receive any estimate "directly from Defendants" until April 2019. [DE-1 ¶¶ 287, 694; see DE-1 ¶ 510 ("Yvonne did not provide a written binding or non-binding estimate to Plaintiff prior to her [Property] being loaded onto trucks and transported")]. Despite those purported facts, Plaintiff alleges that "[CC] and Plaintiff entered into a consumer contract" on or about October 2, 2018, which she describes as follows:

> On or about October 2, 2018, Plaintiff engaged the services of [CC], to inventory and pack all of Plaintiff's [Property], load, transport and unload some of the [Property] to a temporary house approximately 4 miles away, load and transport the remaining [Property] to transport to Florida for safe, careful, appropriate storage, as long as Plaintiff needs, in [CC]'s air conditioned facilities as discussed, repair the Television as discussed, provide valuations as discussed, and then transport Plaintiff's [Property] from both Florida and the temporary house in North Carolina, back to her Home in North Carolina when requested by Plaintiff, unload, unpack and inventory all of Plaintiff's [Property] at Plaintiff's Home.

---

[1] Each of the natural-person Defendants is alleged to have been a member or employee of CC. [see DE-1 ¶¶ 154–217]

2

[DE-1 ¶¶ 306–07]

CC's employees showed up the next day and began to pack the Property for transportation, and the packing process took approximately one week. [DE-1 ¶¶ 312–13] Nicole was among the CC employees who helped to pack Plaintiff's Property. [DE-1 ¶¶ 397–99] During the week that they packed Plaintiff's Property for transport, CC's employees allegedly damaged various Property items. [DE-1 ¶¶ 308–473] Once packing was complete, some of the Property was transported to Plaintiff's temporary residence, and the rest was transported to CC's facility in Florida. [DE-1 ¶¶ 413–73, 521]

CC never provided Plaintiff with a bill of lading or a warehouse receipt regarding the Property. [DE-1 ¶¶ 513–14, 553] Plaintiff alleges that her Property was delayed in arriving at CC's facility and has been damaged during transportation and while being stored at the facility. [DE-1 ¶¶ 522, 531–32, 549] Plaintiff also alleges that some of her Property has been lost. [DE-1 ¶ 568]

After the Property was moved, CC sent Plaintiff inventories of the Property and invoices with the costs of the work, all of which Plaintiff alleges were incomplete, false, and/or fraudulent. [DE-1 ¶¶ 473–503, 669–775] CC has charged Plaintiff for cleaning and storage, among other things, although Plaintiff alleges that she never discussed having the Property cleaned and that Yvonne told her that she could store the Property with CC indefinitely without any surcharge. [DE-1 ¶¶ 279–85, 557, 654]

Plaintiff alleges that her Property is being held for ransom by Defendants pending her payment of CC's invoices, and that the purpose of Defendants' alleged misrepresentations was to gain possession of the Property in order to facilitate the ransom. [DE-1 ¶¶ 558, 573] Plaintiff also alleges that some of her Property is being converted by being sold to satisfy the outstanding invoices. [DE-1 ¶¶ 568, 581–83]

Plaintiff and CC corresponded regarding their dispute in 2019 and early 2020 without reaching any resolution. [DE-1 ¶¶ 575–626] Plaintiff alleges that Yvonne and Null have repeatedly employed "threats, blackmail, harassment and extortion" in order to cause Plaintiff to pay CC's invoices. [DE-1 ¶¶ 624, 641]

3

For example, Plaintiff alleges that in February 2020, Null allegedly contacted her and told her that she needed to pay CC and arrange to have her Property returned to North Carolina "or Defendants would continue to remove Plaintiffs [sic] [Property] for sale[.]" [DE-1 ¶ 625]

Plaintiff filed her complaint in this court on March 2, 2020, purporting to bring claims against Defendants pursuant to the Carmack Amendment, 49 U.S.C. § 14706 (hereinafter, "Carmack"); certain federal regulations; and a host of state statutes, regulations, and common-law causes of action. [DE-1] The same day, Plaintiff also filed a motion seeking an injunction keeping Defendants from selling the Property [DE-4], which the court granted [*see* DE-8; DE-68].[2]

Defendants moved to dismiss the complaint on April 14, 2020 pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(1), -(2), -(3), -(6), and -(7) (hereinafter, e.g., "Rule 9(b)"), and alternatively moved the court pursuant to Rule 12(e) to require Plaintiff to replead the complaint adding more detail. [DE-31] The court ordered supplemental briefing as to the scope of Carmack, i.e., whether Carmack preempts Plaintiff's other causes of action [DE-44], and the parties responded [DE-47–49]. On July 20, 2020, after discovery was underway but before its completion [*see* DE-46], Plaintiff filed a motion for partial summary judgment seeking a ruling that Defendants were not exempt from Carmack [DE-64].

The parties' motions have been fully briefed and are ripe for adjudication.

---

[2] The court touched upon some of Defendants' Rule 12 arguments within the court's July 21, 2020 order granting Plaintiff's motion seeking an injunction. [*see generally* DE-68] Although the court made clear within that order that it declined to rule upon Defendants' motion to dismiss at that juncture [DE-68 at 3], for the sake of clarity, the court emphasizes that this order alone controls the court's disposition of Defendants' motion, and anything within the July 21, 2020 order in conflict with this order is *obiter dictum* regarding Defendants' motion and is disavowed.

4

## II.     Analysis

The court begins by discussing two threshold considerations which drive much of the remainder of the court's analysis.

The first matter concerns the two purported contracts that the parties argue should be deemed to govern this dispute: according to Plaintiff, the purported oral contract described by the complaint [*see* DE-1 ¶¶ 306–07], and according to Defendants, the "WORK AUTHORIZATION AGREEMENT & DIRECTION TO PAY" ("Work Authorization") that they attached to their memorandum of law in support of their motion to dismiss [DE-32-1].

Neither the allegations of the complaint nor the extrinsic evidence introduced by Defendants raise allegations regarding or evidence of enforceable contracts under North Carolina law, which the parties agree governs the question of contract formation in this case.[3]  [*see* DE-38 at 8; DE-71 at 10; DE-92 at 18–19] Under North Carolina law, "[t]he essential elements of a contract are an offer, acceptance and consideration." *Walden v. Vaughn*, 157 N.C. App. 507, 511, 579 S.E.2d 475, 478 (2003).  And "[i]t is axiomatic that a valid contract between two parties can only exist when the parties assent to the same thing

---

[3] Although Plaintiff's Carmack claims are federal-question claims for which state law does not necessarily provide the rule of decision, federal courts typically apply state law in adjudging private contracts. *See Woodward Governor Co. v. Curtiss-Wright Flight Sys.*, 164 F.3d 123, 127 (2d Cir. 1999) (noting that "federal common law applies only where there is a significant conflict between some federal policy or interest and the use of state law" and that "in disputes between two private parties, federal courts . . . have shown a marked reluctance to displace state law by finding a significant conflict with a federal interest" (internal quotation marks and citations omitted)).  Regardless, the court's election to apply North Carolina law is not dispositive here, since North Carolina law and the federal common law are in accord that consideration must be reasonably certain and agreed to by the parties for a purported contract between them to be valid and enforceable. *See United States ex rel. Ubl v. IIF Data Sols.*, 650 F.3d 445, 451 (4th Cir. 2011) ("When applying federal common law to contract issues, courts generally look to the *Restatement* for guidance."); Restatement 2d of Contracts, §§ 17 ("the formation of a contract requires a bargain in which there is a manifestation of mutual assent to the exchange and a consideration"), 33(1) ("Even though a manifestation of intention is intended to be understood as an offer, it cannot be accepted so as to form a contract unless the terms of the contract are reasonably certain"), 33(3) ("The fact that one or more terms of a proposed bargain are left open or uncertain may show that a manifestation of intention is not intended to be understood as an offer or as an acceptance.").

in the same sense, and their minds meet as to all terms." *Normile v. Miller*, 313 N.C. 98, 103, 326 S.E.2d 11, 15 (1985) (internal quotation marks and citation omitted). An agreement to pay money in exchange for a service to be provided constitutes consideration that can support a services contract, but where the parties merely agree to agree on an uncertain price at some time in the future, the contract fails for lack of consideration. As the North Carolina Supreme Court stated, in the real-estate context:

> An offer to enter into a contract in the future must, to be binding, specify all of the essential and material terms and leave nothing to be agreed upon as a result of future negotiations. . . . A covenant to let the premises to the lessee at the expiration of the term without mentioning any price for which they are to be let, or to renew the lease upon such terms as may be agreed on, in neither case amounts to a covenant for renewal, but is altogether void for uncertainty.

*Young v. Sweet*, 266 N.C. 623, 625, 146 S.E.2d 669, 671 (1966) (internal quotation marks and citations omitted); *see Wm. Muirhead Constr. Co. v. Hous. Auth. of Durham*, 1 N.C. App. 181, 187, 160 S.E.2d 542, 547 (1968) (holding that price was "a material point" that "was vital to the consummation of a contract and failure of the minds to meet resulted in no contract").

Neither of the purported contracts alleged or shown by the parties indicate any meeting of the minds as to the material question of the consideration to be provided by Plaintiff in exchange for CC's services. First, Plaintiff alleges that she entered into an oral contract with Yvonne for CC's services, but also alleges that Yvonne told her up front that the cost would be determined at a later time and that she never received any estimate of what CC's services would cost her until months after her Property was moved to Florida. [*see* DE-1 ¶¶ 286–87, 510, 694] Plaintiff nowhere alleges that she ever agreed to pay CC any certain price. Second, the Work Authorization that Defendants claim is the governing contract states as follows:

> Owner understands and agrees that a contract price will be determined at a later date, as determined by [CC]'s Time, Equipment & Materials (available upon request) and/or independent pricing set by insurance restoration purposes by Xactimate. The scope of the Work and costs for same will be prepared following the execution of this Agreement and shown on the invoice for the Work generated by [CC]. For a non-insurance/scope of work (cash job), the contract price shall be

6

$ _____ or not exceed the price of $ _____ with an initial deposit due of fifty (50%) percent of said price with the balance to be paid upon completion of Work.

[DE-32-1] The spaces wherein a contract price could have been offered by CC are left blank in the Work Authorization signed by Plaintiff's mother. [DE-32-1] This document accordingly contemplates a mere agreement by Plaintiff's mother[4] to pay CC an uncertain price, and such uncertainty renders the Work Authorization void as a matter of contract law. *Young*, 266 N.C. at 625, 146 S.E.2d at 671. Because neither of the purported contracts resulted from a meeting of the minds between Plaintiff and any Defendant as to the consideration to be provided by Plaintiff in exchange for CC's services, the court concludes that neither are enforceable contracts.[5]

The second threshold matter is what the fact that no contract governs the parties' dispute as alleged means for this litigation at this stage. Federal courts have indicated that where a dispute arises regarding goods allegedly moved in interstate commerce following an incomplete agreement, Carmack provides the default framework for resolving the dispute. *See Smithfield Beef Grp.-Tolleson, Inc. v. Knight Refrigerated,*

---

[4] Even assuming *arguendo* that the Work Authorization described a certain price, Defendants concede that the Work Authorization was signed only by Plaintiff's mother. [DE-71 at 11 (Defendants arguing that the Work Authorization "evidences the Agreement between Defendant [CC] and non-party Mary Ann Collins")] And although Defendants argue that the signature took place in Plaintiff's presence following discussions with her [*see* DE-87 at 2], the mere presence of a witness when a contract is signed by another is plainly insufficient to bind the witness to terms of the contract. *McLamb v. T.P. Inc.*, 173 N.C. App. 586, 588, 619 S.E.2d 577, 580 (2005) ("A contract is simply a promise supported by consideration, which arises . . . when the terms of an offer are accepted *by the party to whom it is extended*." (emphasis added) (quoting 17 C.J.S. Contracts § 2 (1999)); [*see also* DE-71 at 10–11 (Defendants arguing that Yvonne, Nicole, Koss, and Null "are not parties to the Agreement" and therefore "have no personal obligations pursuant to the Agreement")].

[5] Defendants' attachment of the Work Authorization to their motion to dismiss [DE-32-1] in support of their Rule 12(b) arguments, and the court's consideration of that document, converted their motion to a Rule 56 motion for summary judgment on the question of whether the Work Authorization governs this dispute, and thus implicitly on the question of whether the Work Authorization is an enforceable contract. *See* Fed. R. Civ. P. 12(d); Fed. R. Civ. P. 56(a) (parties can move for summary judgment on "part of [a] claim or defense"). The court need not rule upon the purported oral contract that Plaintiff argues existed under Rule 56, and rules only that the complaint fails to allege any legally-cognizable contract for purposes of Rules 8 and 12(b)(6).

7

*LLC*, No. CV 08-1923-PHX-MHM, 2009 U.S. Dist. LEXIS 130050, at *6 (D. Ariz. June 10, 2009) (in trucking dispute, if "there was no 'meeting of the minds' that occurred . . . the 'default' rules (in this case, the Carmack Amendment) would apply"); *cf. Chartis Seguros Mex., S.A. v. HLI Rail & Rigging, LLC*, 3 F. Supp. 3d 171, 175 (S.D.N.Y. 2014) (noting that Carmack is "the default scheme for rail carriers' liability for goods entrusted to their transport"); *see also Margetson v. United Van Lines, Inc.*, 785 F. Supp. 917, 919 (D.N.M. 1991) ("The Carmack Amendment is to be broadly construed[.]").  Plaintiff purports to bring a Carmack claim in her complaint [DE-1 ¶¶ 776–96], and Defendants did not meaningfully argue that Carmack is not applicable in their motion to dismiss [*see generally* DE-71; *see also* DE-49 (declining to make any arguments about general Carmack applicability, stating that Defendants intend to rely upon 49 U.S.C. § 13505 to argue that they are exempt from Carmack, and suggesting that the question of Carmack's application is most properly addressed at summary judgment)].  The court therefore has no occasion to rule at this stage that Carmack is not potentially available to Plaintiff.

But the court considers it appropriate to forecast for the parties that, in the court's view, Plaintiff appears to have alleged facts tending to establish that Carmack is applicable here.  The Fourth Circuit has described Carmack at a high level as follows:

> The Carmack Amendment . . . makes a carrier liable for the actual loss or injury to the property it transports.  Congress enacted the Carmack Amendment to create a national scheme of carrier liability for goods damaged or lost during interstate shipment under a valid bill of lading.

*Ward v. Allied Van Lines, Inc.*, 231 F.3d 135, 138 (4th Cir. 2000) (internal quotation marks and citations omitted).  Carmack provides that "[a] civil action under this section may be brought against the carrier alleged to have caused the loss or damage, in the judicial district in which such loss or damage is alleged to

8

have occurred." 49 U.S.C. § 14706(d)(2).[6] Under 49 U.S.C. § 13102, which lists the "Definitions" applicable for Carmack purposes: a "carrier" includes "a motor carrier"; a "motor carrier" is defined as "a person providing motor vehicle transportation for compensation"; a "person" is defined by extension to 1 U.S.C. § 1 as including both "companies" and "individuals"; and a "motor vehicle" includes any "vehicle . . . propelled or drawn by mechanical power and used on a highway in transportation[.]" 49 U.S.C. §§ 13102(3), -(14), -(16), -(18). "[T]ransportation" is defined as including: (A) "a motor vehicle . . . related to the movement of . . . property . . . regardless of ownership or an agreement concerning use"; and (B) "services related to that movement, including arranging for, receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, storage, handling, packing, unpacking, and interchange of . . . property[.]" *Id.* at -(23).

Plaintiff has alleged that she owns the Property [DE-1 ¶ 26] that she allowed to be transported [DE-1 ¶ 521] by persons providing transportation of the Property by motor vehicle [DE-1 ¶ 521] in interstate commerce [DE-1 ¶¶ 521–22] for compensation [DE-1 ¶ 286], and that the persons are responsible for loss of or damage to the Property [DE-1 ¶¶ 664, 666]. By doing so, Plaintiff appears to allege facts sufficient to state a Carmack claim against some or all Defendants[7] based upon the alleged loss of or damage to the Property. And as mentioned above, Defendants did not meaningfully argue otherwise in their motion to dismiss.

Therefore, having concluded that (1) there are no enforceable contracts in play but that (2) there is a Carmack claim potentially in play, the court moves on to the analysis of the parties' specific arguments raised in support of their motions.

---

[6] That statute also expressly provides that "[f]ailure to issue a receipt or bill of lading does not affect the liability of a carrier" under Carmack. 49 U.S.C. § 14706(a)(1).

[7] *See infra* note 9.

9

a. <u>Defendants' motion to dismiss or for a more-definite statement</u>

Within their motion, Defendants make the following arguments:

1. Plaintiff lacks standing to bring this lawsuit because she was not party to the Work Authorization, requiring dismissal of all claims pursuant to Rule 12(b)(1);

2. Plaintiff fails to adequately invoke personal jurisdiction over Null or Koss, requiring dismissal of the claims against those Defendants pursuant to Rule 12(b)(2);

3. The Work Authorization's forum-selection clause requires any disputes arising thereunder to be litigated in St. Lucie County, Florida, requiring dismissal of all claims pursuant to Rule 12(b)(3);

4. The counts generally employ a group-pleading approach that does not specify which Defendant is alleged to have committed each act described therein, requiring dismissal of all claims pursuant to Rule 12(b)(6);

5. Because only CC was a party to the Work Authorization, Plaintiff's fourteenth and fifteenth contract-based claims fail to state a claim upon which relief can be granted within the meaning of Rule 12(b)(6) against all Defendants except CC, requiring dismissal of those claims against the non-CC Defendants pursuant to Rule 12(b)(6);

6. Plaintiff's nineteenth claim fails to plead fraud with particularity within the meaning of Rule 9(b), requiring dismissal of that claim pursuant to that rule;

7. Because Plaintiff's mother is CC's contractual counterparty on the Work Authorization, her estate a required party within the meaning of Rule 19 who has not been joined, requiring dismissal of all claims pursuant to Rule 12(b)(7); and

8. In the alternative, the complaint is impermissibly vague or ambiguous within the meaning of Rule 12(e), requiring that Plaintiff be required to replead the complaint with more specificity pursuant to that rule.

[DE-31; DE-71]

*i. Arguments that rise or fall on the absence of a contract*

The court's conclusion that no contract governs this dispute drives the court's analyses of Defendants' Rule 12(b)(1), -(3), and -(7) arguments, and certain of Defendants' Rule 12(b)(6) arguments.

10

First, Defendants' argument that Plaintiff lacks standing to sue Defendants because CC contracted with her mother alone fails because the Work Authorization is void for uncertainty and was never signed by Plaintiff, and therefore cannot be dispositive as to Plaintiff's standing to sue. Moreover, Defendants' argument misconstrues the standing requirement. The Supreme Court has said that a plaintiff must "clearly allege facts demonstrating" that they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision" in order to sufficiently plead standing. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quotation marks, ellipsis, and citations omitted). Plaintiff has clearly alleged that (1) she owns the Property [DE-1 ¶ 26] and (2) Defendants damaged and lost some of the Property [DE-1 ¶ 521], and (3) Plaintiff has asked the court for relief which, if granted, would likely redress her injury, *see* 49 U.S.C. § 14706(a)(1) (carrier is liable to shipper "for the actual loss or injury to the property" the carrier causes). Plaintiff has therefore properly pleaded standing to bring her lawsuit seeking redress for the injury that she has allegedly suffered. Defendants' Rule 12(b)(1) argument is accordingly overruled.

Second, the court's conclusion that the Work Authorization is not an enforceable contract requires the corresponding conclusion that the forum-selection clause therein is not enforceable, and Defendant's venue argument fails for that reason. Furthermore, Carmack makes clear that claims for lost or damaged property "may be brought [thereunder] against the carrier alleged to have caused the loss or damage, in the judicial district in which such loss or damage is alleged to have occurred[,]" 49 U.S.C. § 14706(d)(2), and venue is proper in general where a civil action is brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred," 28 U.S.C. § 1391(b)(2). Thus, because Plaintiff alleges that her Property was damaged within this judicial district [*e.g.*, DE-1 ¶¶ 338, 377, 391],

11

this court is a proper venue to hear both Plaintiff's Carmack claims[8] and her state-law claims. Defendants'

Rule 12(b)(3) argument is accordingly overruled as well.

Third, the court's conclusion that the Work Authorization is not an enforceable contract requires the corresponding conclusion that Plaintiff's mother's estate is not a necessary party to this litigation. Plaintiff has only sued Defendants regarding damage to her own Property [*see* DE-1 ¶ 26 (describing "Ms. Bryant's HHG[,]" i.e., the Property), meaning that the court can "accord complete relief among [the] existing parties" in Plaintiff's mother's estate's absence. *See* Fed. R. Civ. P. 19(a)(1)(A). Further, Plaintiff's mother's estate has neither claimed any interest in this litigation nor is so situated that Defendants might be left "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations" should the litigation proceed in the estate's absence. Fed. R. Civ. P. 19(a)(1)(B). For these reasons, the court concludes that Plaintiff's mother's estate is not a required party within the meaning of Rule 19, and Defendants Rule 12(b)(7) argument is also overruled.

Finally, the court's conclusion that no enforceable contract governs the parties' dispute means that Plaintiff's contract-based claims—Counts 14 and 15—must be dismissed pursuant to Rule 12(b)(6). *See Poor v. Hill*, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000) ("The elements of a claim for breach of contract are (1) existence of a *valid contract* and (2) breach of the terms of that contract." (emphasis added)); *Boylan v. Hot Springs R. Co.*, 132 U.S. 146, 151 (1889) ("There being no such contract in force, there could

---

[8] This court would likely be a proper venue for Plaintiff's Carmack claims even if the Work Authorization bound Plaintiff. *See ICON Health & Fitness, Inc. v. NVC Logistics Grp., Inc.*, No. 1:16-cv-00167-JNP-EJF, 2017 U.S. Dist. LEXIS 95734, at *8 (D. Utah June 20, 2017) (concluding that Carmack preempts contractual forum-selection clauses); *Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp.*, 561 U.S. 89, 98 (2010) ("it can be assumed that if Carmack's terms apply to the bills of lading here, the cargo owners would have a substantial argument that the Tokyo forum-selection clause in the bills is pre-empted by Carmack's venue provisions"); *Smallwood v. Allied Van Lines, Inc.*, 660 F.3d 1115, 1122 (9th Cir. 2011) (noting that Carmack "assure[s] the shipper a choice of forums as plaintiff").

be no breach of it").  Defendants' Rule 12(b)(6) arguments regarding Plaintiff's contract-based claims are accordingly sustained.

          *ii.  Null and Koss's Rule 12(b)(2) arguments*

Defendants Null and Koss also argue that the complaint fails to make allegations sufficient for the court to exercise personal jurisdiction over them.

The Fourth Circuit has articulated the process for adjudicating Rule 12(b)(2) motions to dismiss for lack of personal jurisdiction as follows:

> Under Rule 12(b)(2), a defendant must affirmatively raise a personal jurisdiction challenge, but the plaintiff bears the burden of demonstrating personal jurisdiction at every stage following such a challenge.  And a Rule 12(b)(2) challenge raises an issue for the court to resolve, generally as a preliminary matter. . . .
>
> The plaintiff's burden in establishing jurisdiction varies according to the posture of a case and the evidence that has been presented to the court.  For example, when the court addresses the personal jurisdiction question by reviewing only the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint, a plaintiff need only make a <u>prima facie</u> showing of personal jurisdiction to survive the jurisdictional challenge.  When determining whether a plaintiff has made the requisite <u>prima facie</u> showing, the court must take the allegations and available evidence relating to personal jurisdiction in the light most favorable to the plaintiff.

*Grayson v. Anderson*, 816 F.3d 262, 267–68 (4th Cir. 2016) (citations omitted).  To make the *prima facie* showing required to survive a Rule 12(b)(2) challenge at this stage, a plaintiff must show two things:

> First, the exercise of jurisdiction must be authorized by the long-arm statute of the forum state, and,
>
> [S]econd, the exercise of personal jurisdiction must also comport with Fourteenth Amendment due process requirements.

*Christian Sci. Bd. of Dirs. of the First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001).

North Carolina's courts have said that North Carolina's long-arm statute, N.C. Gen. Stat. § 1-75.4, authorizes the exercise of jurisdiction to the full extent authorized by the United States Constitution. *Padron*

13

*v. Bentley Marine Grp., LLC*, 262 N.C. App. 610, 615, 822 S.E.2d 494, 498 (2018) (North Carolina's "statutory authorization for personal jurisdiction is coextensive with federal due process"). The sole question before the court is therefore whether its "exercise of personal jurisdiction [over Null and Koss] comport[s] with Fourteenth Amendment due process requirements." *Nolan*, 259 F.3d at 215.

The exercise of personal jurisdiction over a nonresident defendant comports with due process where the court concludes that it has either general or specific personal jurisdiction over the defendant. "General personal jurisdiction requires 'continuous and systemic' contacts with the forum state." *Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185, 188 (4th Cir. 2016) (citation omitted). Where, as here, it is not alleged that the defendant has continuous and systemic contacts with the forum state, a court may only exercise specific personal jurisdiction over the defendant. The Fourth Circuit has said:

> In determining whether specific jurisdiction exists, we consider
>
> (1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state;
>
> (2) whether the plaintiffs' claims arise out of those activities directed at the state; and
>
> (3) whether the exercise of personal jurisdiction would be constitutionally "reasonable."

*Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 397 (4th Cir. 2003) (citations omitted). The first consideration "articulates the minimum contacts requirement of constitutional due process that the defendant purposefully avail himself of the privilege of conducting business under the laws of the forum state." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009) (discussing the "minimum contacts" analysis first promulgated in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945)). And in recognition of the "inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines[,]" the Court has also held that "[s]o long as a commercial actor's efforts are 'purposefully directed' toward

14

residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (citations omitted). Finally, where a business organization is subject to personal jurisdiction in a forum, mere membership in or employment by the organization is insufficient to confer personal jurisdiction over an individual, but the fact that an individual's contacts with the forum were undertaken on behalf of the organization does not mean that the individual cannot be subject to personal jurisdiction on the basis of those contacts. *See Calder v. Jones*, 465 U.S. 783, 790 (1984) ("Petitioners are correct that their contacts with California are not to be judged according to their employer's activities there. On the other hand, their status as employees does not somehow insulate them from jurisdiction. Each defendant's contacts with the forum State must be assessed individually."); *V-E2, LLC v. Callbutton, LLC*, No. 3:10cv538, 2012 U.S. Dist. LEXIS 174633, at *8–9 (W.D.N.C. Dec. 8, 2012) ("personal jurisdiction over a limited liability company does not automatically extend to its members, as membership in an LLC is not sufficient in-and-of itself to confer personal jurisdiction over its members . . . To hale a member of an LLC into a foreign court, the member . . . must have had minimum contacts with the forum state independent of those of the LLC" (internal citations omitted)).

Beyond reciting law, Null and Koss only argue that "[t]he Complaint contains no facts establishing that either defendant engaged in activity, substantial or otherwise, in North Carolina, either with regard to this particular matter or as to any other matter." [DE-71 at 8] And it is true that the complaint makes no discrete allegations that either Null or Koss engaged in any specific activity within North Carolina. However, courts adjudicating Rule 12(b)(2) motions have noted that the court may take into account not only the pleading, but also documents attached to the parties' motions, including affidavits. *See Grayson*, 816 F.3d at 268 (noting that courts can "address[] the personal jurisdiction question by reviewing only the parties' motion papers, *affidavits attached to the motion*, supporting legal memoranda, and the allegations

15

in the complaint" and that in such a circumstance "the court must take the allegations *and available evidence relating to personal jurisdiction* in the light most favorable to the plaintiff" (emphases added)); *Universal Leather, LLC v. Koro Ar, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014) (district courts can "consider[] a question of personal jurisdiction based on the contents of a complaint *and supporting affidavits*" (emphasis added)).

In response to Defendants' Rule 12(b)(2) motion to dismiss, Plaintiff attaches her own affidavit attesting that, *inter alia*, Null solicited unskilled workers in North Carolina to work for CC in October 2018. [DE-41 ¶ 124] This attestation appears to be corroborated by documentary evidence of the solicitation that Plaintiff attached to her response [*see* DE-38-3], whose authenticity Defendants did not contest in their reply [DE-43]. And in her complaint, Plaintiff alleges that Null worked for CC, that CC hired unskilled laborers to help move her Property, and that the unskilled laborers damaged her Property during the transportation thereof. [DE-1 ¶¶ 208–217, 308–38] These allegations, Plaintiff's response papers, and the evidence provided in support, taken in the light most favorable to Plaintiff as required by *Grayson*, 816 F.3d at 268, compel the court to conclude that Plaintiff has made a threshold showing that (1) Null purposefully availed herself of the privilege of conducting business within North Carolina within the meaning of *Carefirst*. Further, the court concludes that, also within the meaning of *Carefirst*, (2) Plaintiff's Carmack claims arise out of this alleged activity[9] and (3) the court's exercise of personal jurisdiction over

---

[9] The court's conclusion that Plaintiff's Carmack claims arise out of Null's activities within the meaning of *Carefirst* for personal-jurisdictional purposes is analytically distinct from the question of whether a Carmack claim against the natural-person Defendants can survive a properly-raised and -supported legal challenge, i.e., is distinct from the question of whether such claims are legally cognizable. But Defendants have not specifically moved under Rule 12(b)(6) to dismiss such claims, and without such a motion and supporting argument and citation to legal authorities, the court will not undertake such an analysis. *See* Local Civil Rules 7.1(b)(1) & 7.2(a)(3) (motions "shall state precisely the relief requested" and memoranda in support or opposition "shall contain . . . appropriate citations" to authority).

16

Null in connection with all of Plaintiff's claims against her[10] is otherwise reasonable. *See Consulting Eng'rs*, 561 F.3d at 79 (discussing third *Carefirst* prong). The court accordingly concludes that Plaintiff has made a *prima facie* showing that the court may exercise personal jurisdiction over Null, and dismissal of the claims against her pursuant to Rule 12(b)(2) is not warranted at this time.[11]

The court concludes that Plaintiff's allegations and attestations regarding Koss, however, do not comprise the *prima facie* showing necessary to confer personal jurisdiction over her. In response to Defendant's Rule 12(b)(2) motion, Plaintiff attests only that Koss emailed her one time "asking for payment" after Plaintiff's complaint was filed. [DE-41 ¶ 123] The court is hesitant to recognize a single request as the purposeful availment contemplated by *Carefirst*'s first prong, and since her complaint was already filed when Koss made the attested-to contact, it cannot be meaningfully argued that any of the claims brought within the complaint "arise out of" that contact within the meaning *Carefirst*'s second prong. The court therefore concludes that exercising specific personal jurisdiction over Koss based upon this single email would offend due process, and the court grants Koss's Rule 12(b)(2) motion and dismisses her from the case on that basis.

### iii.   *Defendants' remaining arguments*

That leaves Defendants' Rule 9(b)- and general Rule 12(b)(6) arguments to be analyzed.

---

[10] *See ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 628 (4th Cir. 1997) ("we recognize pendent personal jurisdiction of a district court which has obtained personal jurisdiction over a defendant by reason of a federal claim to adjudicate state claims properly within the court's subject matter jurisdiction"); *see also Stanley v. Brooks*, 112 N.C. App. 609, 611, 436 S.E.2d 272, 273 (1993) (elements of negligent-hiring claim); *Hansley v. Tilton*, 234 N.C. 3, 8, 65 S.E.2d 300, 303 (1951) ("The authorities generally hold the employee individually liable for negligence in the performance of his duties[.]").

[11] Null may renew her personal-jurisdiction challenge at a later time should she wish. *See Grayson*, 816 F.3d at 267 (noting that "the plaintiff bears the burden of demonstrating personal jurisdiction at every stage following" a challenge thereto).

17

Regarding the former, Defendants argue that Plaintiff's nineteenth cause of action should be dismissed for failure to plead fraud with the "particularity" required by Rule 9(b). The Fourth Circuit has said that, in order to withstand a Rule 9(b) challenge, a plaintiff bringing a fraud claim must, "describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (internal quotation marks and citation omitted). But the Fourth Circuit has also said that "[a] court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).

The complaint alleges, e.g., that Plaintiff discussed the transportation of her Property with Yvonne in early October 2018, and that Yvonne intentionally concealed from Plaintiff that her Property would be cleaned and stored for a surcharge before agreeing on CC's behalf to transport the Property to Florida. [DE-1 ¶ 281] Plaintiff alleges that she allowed CC to transport her Property thereafter, and a reasonable inference is that Plaintiff would not have done so—avoiding the alleged damages to the Property—but for the fraudulent concealment. The court concludes that these are sufficiently-particular allegations of the purported fraud under North Carolina law, *see Rowan Cnty. Bd. of Educ. v. United States Gypsum Co.*, 332 N.C. 1, 17, 418 S.E.2d 648, 658 (1992) ("The essential elements of fraud are: (1) [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." (internal quotation marks and

18

citation omitted)), and that these allegations put Defendants—at least Yvonne and CC,[12] *see Taft v. Brinley's Grading Servs.*, 225 N.C. App. 502, 512, 738 S.E.2d 741, 748 (2013) (discussing doctrine of *respondeat superior*)—on notice of the particular circumstances for which they will have to prepare a defense within the meaning of *Harrison*. Defendants' Rule 9(b) argument is accordingly overruled.

Finally, Defendants argue:

> The twenty-five enumerated counts of Plaintiff's Complaint are applied to all of the Defendants without any distinction whatsoever. These counts rely solely on formulaic recitations of the elements of the causes of action, conclusory allegations, and legal conclusions that are insufficient to plead claims upon which relief can be granted.

[DE-71 at 10] Defendants accordingly make a general argument that the counts should all be dismissed pursuant to Rule 12(b)(6) because they are impermissibly vague.

The court agrees with Defendants that many of the counts do not properly specify which Defendant is charged with which claim. Courts in this circuit have said that the group-pleading approach that Plaintiff employs in many of her counts may run afoul of federal pleading requirements. *See, e.g., Proctor v. Metro. Money Store Corp.*, 579 F. Supp. 2d 724, 744 (D. Md. 2008) ("Plaintiffs cannot remedy [a lack of factual allegations sufficient to establish liability] by simply listing everyone that could have been involved for every specific act that allegedly occurred on behalf of [employer-defendant]. At best, such pleading amounts to a conclusory allegation that [employee-defendants] were somehow responsible for the wrongful conduct of [employer-defendant]. At worst, the repeated refrain that all three individuals committed each and every act must be read as an allegation that *one of the three* did each act, an assertion that amounts to

---

[12] As discussed in the following paragraphs, Plaintiff's fraud count, like all the others, incorporates the other paragraphs of the complaint by reference, and Plaintiff has agreed to file an amended complaint breaking out the counts with more specificity. Should Plaintiff have intended to also sue Nicole and Null for fraud, Plaintiff must identify which of those Defendants' acts or omissions described within the complaint were allegedly fraudulent within the amended count, or else the court will sustain a subsequent Rule 9(b) challenge filed on those Defendants' behalf.

19

speculation and which is deficient under" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), which sets forth the plausibility standard applied in adjudicating Rule 12(b)(6) challenges). Although each of counts incorporates by reference all preceding paragraphs of the complaint, the court will not undertake to search these paragraphs for specific allegations supporting the 25 individual causes of action. *See Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) (even on behalf of *pro se* litigants, district courts are "not require[d] . . . to conjure up questions never squarely presented to them" or "to anticipate all arguments that clever counsel may present in some appellate future. To do so would not only strain judicial resources by requiring those courts to explore exhaustively all potential claims of a . . . plaintiff, but would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party."). The Federal Rules of Civil Procedure also do not require that defendants undertake such a task, which is Plaintiff's alone. *See* Fed. R. Civ. P. 8(a) (a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief").

However, two considerations convince the court that wholesale dismissal of all of the claims is not the appropriate result at this stage. First, as mentioned, each of Plaintiff's counts incorporates by reference the other allegations within the complaint, many of which appear to specifically identify specific Defendants who are alleged to have undertaken specific acts. Second, Defendants have moved the court to require Plaintiff to make a more-definite statement of the allegations pursuant to Rule 12(e), and Plaintiff has responded indicating that she does not object to filing an amended complaint that includes more specificity. [*see* DE-38 at 29 ("To the extent that [Defendants] are requesting Pltf substitute names where she used the term 'Defendants' Pltf has no objection to doing so.")]

Accordingly, the court will overrule Defendants' general Rule 12(b)(6) argument regarding the counts at this time, but will grant Defendants' Rule 12(e) motion and direct Plaintiff to file an amended

20

complaint which breaks out, *within the counts only*, which specific Defendants are charged with the specific claim and which of those Defendants' specific acts currently alleged within the body of the complaint purportedly comprise the unlawful conduct for which Plaintiff seeks relief. In addition, anywhere Plaintiff uses the collective term "Defendants" within the body of her complaint—*and in those places only*—Plaintiff may break out those terms to specify particular Defendant(s), to the extent Plaintiff did not intend to allege that all of the Defendants undertook the act described. Beyond these instructions, no additional detail will be allowed or required at this time,[13] and to the extent Defendants have moved seeking relief under Rule 12(e) beyond what the court has instructed, the motion will be denied.

  b. Plaintiff's motion for partial summary judgment

Under Rule 56:

> A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). Within the meaning of Rule 56: (1) a fact is "material" if a jury's decision regarding the fact's existence or nonexistence "might affect the outcome of the suit under the governing law"; and (2) a dispute about a material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmovant is entitled "to have the credibility of his evidence as forecast assumed, his version of all that is in dispute accepted, [and] all internal conflicts in it resolved favorably to him[.]" *Charbonnages de France*

---

[13] For the avoidance of doubt, the court's direction is not an invitation for Plaintiff to amend the body of her complaint with additional claims, allegations, or details beyond the Defendants' identities and the alleged acts that are purportedly pertinent to the various counts. Should Plaintiff wish to amend her complaint further, Plaintiff may seek Defendants' consent or move the court for leave to do so, as the Federal Rules of Civil Procedure require. *See* Fed. R. Civ. P. 15(a).

21

*v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979). Where, in light of the evidence raised by the parties viewed in the light most favorable to the nonmovant, the district court concludes that a reasonable jury could render a verdict in favor of the nonmovant, summary judgment must be denied. *Anderson*, 477 U.S. at 248. Where, in light of the same, the court concludes that a jury could not reasonably render a verdict in the nonmovant's favor, summary judgment may be granted. *Id.* at 249–50.

Plaintiff has moved for partial summary judgment on the question of whether Defendants are exempt from Carmack. [DE-64] Plaintiff does so, in part, in response to Defendants' invocation of 49 U.S.C. § 13505 in their response to the court's solicitation of additional briefing on the question of whether Carmack preempts Plaintiff's state-law claims. [DE-49]

Carmack creates liability for a motor-vehicle "carrier that delivers . . . property and is providing transportation or service subject to jurisdiction under subchapter I or III of chapter 135" of Title 49, Subtitle IV, Part B of the United States Code. 49 U.S.C. § 14076(a)(1). One of those jurisdictional provisions is 49 U.S.C. § 13505, entitled "Transportation furthering a primary business[,]" which sets forth in part as follows:

> In General.—Neither the Secretary [of Transportation] nor the [Surface Transportation] Board has jurisdiction under this part over the transportation of property by motor vehicle when—
>
> > (1) the property is transported by a person engaged in a business other than transportation; and
> >
> > (2) the transportation is within the scope of, and furthers a primary business (other than transportation) of the person.

49 U.S.C. § 13505(a). Accordingly, if the transportation at issue implicates 49 U.S.C. § 13505, a motor-vehicle carrier cannot be sued under Carmack for engaging in such transportation. *See generally Syracuse Plastics v. Guy M. Turner, Inc.*, 959 F. Supp. 147 (N.D.N.Y. 1997) (discussing 49 U.S.C. § 13505 as an exemption to Carmack).

22

The question of whether 49 U.S.C. § 13505 applies here turns upon whether (1) Defendants transported Plaintiff's Property while "engaged in a business other than transportation" and (2) that transportation was "within the scope of, and further[ed] a primary business (other than transportation) of" Defendants. 49 U.S.C. § 13505(a). If such facts are affirmatively established, then Plaintiff's Carmack claim will fail as a matter of law, which would have dispositive effects upon many if not all of Plaintiff's other claims, since Carmack's preemptive effect on state-law claims is broad. *See Adams Express Co. v. Croninger*, 226 U.S. 491, 505–06 (1913) ("Almost every detail of the subject [of carrier liability for property damage or loss during interstate transportation] is covered so completely [by Carmack] that there can be no rational doubt but that Congress intended to take possession of the subject, and supersede all state regulation with reference to it."); *5K Logistics, Inc. v. Daily Express, Inc.*, 659 F.3d 331, 335 (4th Cir. 2011) (noting that Carmack "has long been interpreted to preempt state liability rules pertaining to cargo carriage, either under statute or common law"). The facts implicated by Plaintiff's motion for summary judgment are therefore "material" to all of the claims here at issue, and the only question for the court's determination is whether Plaintiff has "show[n] that there is no genuine dispute as to" these material facts such that she "is entitled to judgment as a matter of law" on them, i.e., to a summary judgment that 49 U.S.C. § 13505 does not apply here. Fed. R. Civ. P. 56(a); *Anderson*, 477 U.S. at 248.

The court concludes that Plaintiff has failed to show that there is no genuine dispute regarding the facts implicated by the 49 U.S.C. § 13505 exemption. As the court reads the statute, resolving the exemption issue requires factual determinations regarding: (1) what Defendants' primary businesses are, generally speaking; and (2) whether the specific transportation of Plaintiff's Property fell within the scope of and furthered those businesses. *See* 49 U.S.C. § 130505(a). And although these determinations depend upon the what Defendants' primary businesses were in general, Plaintiff does not offer evidence on that score that would require a reasonable jury to render a verdict in her favor. While the evidence that Plaintiff

23

raises regarding the specific business that she conducted with Defendants appears to demonstrate that that specific transaction was predominated by undertakings that fall within Carmack's definition of "transportation" [*compare* 49 U.S.C. § 13102(23) (transportation includes "movement of . . . property" and "services related to that movement, including arranging for, receipt, delivery . . . storage, handling, packing, unpacking, and interchange of . . . property"), *with* DE-65-9 (CC estimate of services rendered "for safely packing, moving, moving homeowner to temp home, cleaning, loss evaluation, storage, move back and unpacking of personal property" with majority of charges appearing related to packing, moving, unpacking, and storing the Property)]—which is certainly some evidence regarding Defendants' primary businesses— the same evidence also demonstrates that "transportation" was not Defendants' only business [DE-65-9 (charging over $16,000 for cleaning services)].  Further, Plaintiff attaches a copy of an unexecuted CC work-authorization form to her motion, which she describes as a "Sample of [CC]'s Work Authorization" and which appears identical to the Work Authorization that Plaintiff's mother apparently signed before the Property was transported.  [DE-65-25; DE-32-1]  Both of these documents provide evidence that CC regularly worked "to mobilize, provide services and complete the necessary work to inventory, restore, clean, and/or deodorize . . . building structure[s] and/or contents related to . . . property loss[es.]"  [DE-65-25; DE-32-1]  Such services do not fall within 49 U.S.C. § 13102(23)'s ambit, and therefore describe a "business other than transportation[.]"  49 U.S.C. § 13505(a)(1).  If a jury were to determine that (1) such services comprised Defendants' primary businesses and (2) the transportation of Plaintiff's Property fell within the scope of and furthered those businesses, 49 U.S.C. § 13505(a)(2), that jury could reasonably find facts that would require the court to conclude that Defendants are exempt from Carmack.  Without evidence rendering such findings unreasonable, the court cannot conclude under Rule 56 that 49 U.S.C. § 13505 is inapplicable.  *Anderson*, 477 U.S. at 248.

Therefore, in light of the record evidence raised by the parties viewed in the light most favorable to Defendants, the court concludes that Plaintiff has failed to demonstrate that there is no genuine dispute as to the material facts implicated by the 49 U.S.C. § 13505 exemption issue at this time. Plaintiff's motion for partial summary judgment will accordingly be denied, and resolution of the exemption issue will take place at a preliminary trial.

### III.  Conclusion

For the foregoing reasons: (1) Defendants' motion is DENIED, except with respect to: (a) counts 14 and 15, which are DISMISSED pursuant to Rule 12(b)(6); (b) Plaintiff's claims against Koss, which are DISMISSED *in toto* pursuant to Rule 12(b)(2); and (c) Defendants' Rule 12(e) motion for a more definite statement, which is GRANTED as described above; and (2) Plaintiff's motion is DENIED. In addition, because Plaintiff has conceded that she cannot sustain them, Plaintiff's fourth, eleventh, twenty-fourth, and twenty-fifth claims are also DISMISSED pursuant to Rule 41(a)(2). [*see* DE-47 at 20]

Plaintiff is DIRECTED to file an amended complaint with the additional details described above in Section II(a)(iii) within thirty (30) days following the date of entry of this order. Once Plaintiff has filed her amended complaint, should Defendants find that the amendments fail to remedy the lack of specificity of which they have complained, the court will entertain additional Rule 9(b) or 12 motions if such motions are filed within twenty-one (21) days of the date of service of the amended complaint. The court will rule upon any additional Rule 9(b) or 12 motions on an expedited basis.

In addition, to the extent that compelling evidence was newly obtained in discovery since the parties' Rule 56 papers were filed, the court will also entertain additional Rule 56 motions based upon and identifying such evidence if such motions are filed within thirty (30) days of the date of entry of this order. The court will also rule upon any additional Rule 56 motions on an expedited basis.

25

Finally, the Clerk of Court is DIRECTED to set a preliminary trial ninety (90) days following the date of entry of this order regarding the factual determinations necessary to determine whether or not Carmack (and thus 49 U.S.C. § 13505) is implicated here, as described above. The court recommends that the parties stipulate to a bench trial on these issues, but the trial will be conducted by jury unless the parties stipulate otherwise. *See* Fed. R. Civ. P. 39. The currently-scheduled trial on all issues is CONTINUED pending resolution of the Carmack issues and further order of the court.

SO ORDERED this the _____30th_____ day of _____March_____, 2021.


*Richard E Myers II*
RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE

26